Charles Gerstein (*pro hac vice* application forthcoming)
(DC Bar No. 1033346)
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809

Nancy M. Lemcke, Deputy Public Defender
Christy L. Craig, Deputy Public Defender
Clark County Public Defender
309 S. Third Street, Second Floor
Las Vegas, Nevada 89144
lemckenl@clarkcountynv.gov
craigcl@clarkcountynv.gov
(702) 455-5039
(702) 455-2728

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

JOSE VALDEZ-JIMENEZ,

        Petitioner,

        v.

Sheriff JOSEPH LOMBARDO,
Clark County Sheriff,

        Respondent.

CASE NO. _____

**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................3

I.      INTRODUCTION.................................................................6

II.     BACKGROUND—BAIL IS A MECHANISM OF PRETRIAL RELEASE, PRETRIAL DETENTION..........................................................8

III.    FACTS.......................................................................**12**

IV.     STANDARD OF REVIEW....................................................15

V.      ARGUMENT.................................................................16

       *a.      Jailing Mr. Valdez-Jimenez For Inability to Make a Monetary Payment that the State Concedes He Cannot Make Violates the Equal Protection and Due Process Clauses................................................17*

       *b.      Jailing Mr. Valdez-Jimenez Pretrial Without a Robust Hearing on, and Specific Findings Concerning, his Dangerousness or Risk of Flight Simply Because He Cannot Pay Secured Money Bail Violates the Due Process Clause ................................................................19*

    *i. Salerno and its Progeny Allow Pretrial Detention Only When it Complies with Substantive and Procedural Due Process Principles.............................................................................16*

    *ii. An Unattainable Money Bail Amount is Equivalent to an Order of Detention.............................................................................18*

    *iii. Because No Court Has Properly Found Mr. Valdez-Jimenez to Be Dangerous or at Risk of Flight, the Order of Detention Violates the Due Process Clause..........................................................................19*

VI.     CONCLUSION.................................................................20

**TABLE OF AUTHORITIES**

**Cases**

*Addington v. Texas,*
    441 U.S. 418 (1979)……………………………………………………………17

*Atkins v. Michigan,*
    644 F.2d 543 (6th Cir. 1981)……………………………………………….. 11

*Bandy v. United States,*
    81 S. Ct. 197 (1960)…………………………………………………………. 13

*Bearden v. Georgia,*
    461 U.S. 660 (1983)…………………………………………………..2, 13, 14

*Brangan v. Commonwealth,*
    80 N.E.3d 949 (Mass. 2017)……………………………………………...3

*Carlisle v. Desoto Cnty., Miss.,*
    2010 WL 3894114 (N.D. Miss. Sept. 30, 2010)18

*Douglas v. California,*
    372 U.S. 353 (1963)…………………………………………………………12

*Foucha v. Louisiana,*
    504 U.S. 71 (1992)………………………………………………………...14

*Gonzalez v. Justices of Mun. Ct. of Boston,*
    382 F.3d 1 (1st Cir. 2004), *judgment vacated on other grounds,*
    544 U.S. 918 (2005)………………………………………………………11

*Griffin v. Illinois,*
    351 U.S. 12 (1956)………………………………………………………...12

*In re Humphrey,*
    19 Cal. App. 5th 1006 (Ct. App. 2018)……………………………………3

*Kleinbart v. United States,*
    604 A.2d 861 (D.C. 1992)…………………………………………………17

*Lopez-Valenzuela v. Arpaio,*
    770 F.3d 772 (9th Cir. 2014)……………………………………...15, 17, 18

*Martinez v. Caldwell,*
    644 F.3d 238 (5th Cir. 2011)……………………………………………...11

3

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)……………………………………………………..15, 17

*Mayer v. City of Chicago*,
    404 U.S. 189 (1971)………………………………………………………12

*Morrissey v. Brewer*,
    408 U.S. 471 (1972)………………………………………………………20

*ODonnell v. Harris Cty., Texas*,
    2017 WL 1735456 (S.D. Tex. Apr. 28, 2017)………………...7, 9, 10,11, 18, 20, 22, 23

*Phillips v. Court of Common Pleas, Hamilton Cty.*, Ohio,
    668 F.3d 804 (6th Cir. 2012)……………………………………………11

*Pugh v. Rainwater*,
    557 F.2d 1189 (5th Cir. 1977)……………………………………2, 13, 14

*Simpson v. Miller*,
    387 P.3d 1270 (Ariz. 2017)………………………………………………17

*State v. Brown*,
    338 P.3d 1276 (N.M. 2014)…………………………………………...2, 15, 18

*Stow v. Murashige*,
    389 F.3d 880 (9th Cir. 2004)……………………………………………11

*Tate v. Short*,
    401 U.S. 395 (1971)………………………………………………………12

*United States v. Leathers*,
    412 F.2d 169 (D.C. Cir. 1969)……………………………………15, 18

*United States v. Mantecon-Zayas*,
    949 F.2d 548 (1st Cir. 1991)…………………………………...7, 22, 24

*United States v. McConnell*,
    842 F.2d 105 (5th Cir. 1988)……………………………………………18

*United States v. Montalvo-Murillo*,
    495 U.S. 711 (1990)………………………………………………………14

*United States v. Salerno*,
    481 U.S. 739 (1987)………………………………...7, 10, 11, 19, 20, 21, 22, 24

*Walck v. Edmondson*,
    472 F.3d 1227 (10th Cir. 2007)…………………………………………11

*White v. Lambert*,
   370 F.3d 1002 (9th Cir. 2004)…………………………………………………….11

*Williams v. Illinois*,
   399 U.S. 235 (1970)………………………………………………………….6, 12

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)……………………………………………………………14

**Constitutional Provisions**

U.S. Const. art. I, § 9…………………………………………………………….10

U.S. Const. amend XIV……………………………………………………….....10

**Statutes**

18 U.S.C. §§ 3141–3150……………………………………………………….6

18 U.S.C. § 3142(c)(2)…………………………………………………………...7

28 U.S.C. § 2241………………………………………………………………10

The Bail Reform Act of 1966, 80 STAT. 214 (repealed 1984)…………………………..6

**Other Authorities**

1 J. CHITTY, A PRACTICAL TREATISE ON THE CRIMINAL LAW (Philadelphia ed. 1819)………5

Brief for Amicus Curiae CATO Institute, *Walker v. City of Calhoun, Ga.*,
No. 16-10521 (11th Cir. 2016)……………………………………………………….3

Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. PA. L. REV. 959 (1965)…5

DANIEL J. FREED & PATRICIA M. WALD, BAIL IN THE UNITED STATES: 1964 (1964)………..4

June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic
Principles in the Administration of Bail*, 34 SYRACUSE L. REV. 517 (1983)…………….....4, 5

Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*,
55 ARIZ. L. REV. 909 (2013)……………………………………………………….5

Note, *Bail: An Ancient Practice Reexamined*, 70 YALE L.J. 966 (1961)………………….4

Robert F. Kennedy, Aug. 4, 1964, Testimony on Bail Legislation before the Senate Judiciary
Committee…………………………………………………………………...6

Timothy R. Schnacke, U.S. Department of Justice—National Institute for Corrections,
*Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for
American Pretrial Reform* (Aug. 2014)……………………………………………..3

5

Petitioner Jose Valdez-Jimenez is in a Clark County jail cell. He has not been convicted of a crime, and no court has found that releasing him would pose a risk of flight or danger to the community. Mr. Valdez-Jimenez is in jail because he is indigent and the Eighth Judicial District Court for the State of Nevada required a financial condition of release that he cannot afford. An unaffordable condition of pretrial release is an order of pretrial detention. The State of Nevada has not complied with the substantive and procedural requirements for entering an order of pretrial detention. And Mr. Valdez-Jimenez is therefore being jailed in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

Mr. Valdez-Jimenez respectfully petitions for a conditional writ of habeas corpus ordering his release unless the Eighth Judicial District Court for the State of Nevada conducts a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether Mr. Valdez-Jimenez is a danger to the community and, if so, whether conditions of release exist that could reasonably ensure his presence at trial and the safety of the community.

## I.  INTRODUCTION

There are two principal constitutional problems with detaining a person prior to trial simply because he cannot make a monetary payment: (1) jailing someone solely because he cannot pay a sum of money without making a finding that he is able to pay it infringes a fundamental right solely on the basis of wealth in violation of the Equal Protection and Due Process Clauses; and (2) jailing someone on an unattainable financial condition violates the Constitution because it deprives a presumptively innocent person of the fundamental right to liberty without complying with the substantive and procedural requirements for a valid order of detention under the Due Process Clause. If the state jails someone for failing to pay a sum of money, it must either make a procedurally proper finding that the person is able to pay the

sum and is willfully refusing to, or that jailing the person outright would be permissible under the Due Process Clause because no alternatives exist to meet compelling government interests. The state did neither here.

The state may not jail someone simply because he has not paid a sum of money unless a court makes a finding that he is able to pay it. In *Bearden v. Georgia,* 461 U.S. 660, 672–73 (1983), the Supreme Court explained that to "deprive [a convicted defendant] of his conditional freedom simply because, through no fault of his own he cannot pay [a] fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment." The principles that forbid jailing a *convicted* defendant because he is unable to make a payment apply with even greater force to an arrestee who is presumed innocent. *See ODonnell v. Harris County*, 892 F.3d 147, 161 (5th Cir. 2018) ("[P]retrial imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." (internal quotation marks and citations omitted)); *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (affirming the unconstitutionality of the use of secured money bail without inquiry into ability to pay because it invidiously discriminates against the poor).

In this case, the money-bail amount was ultimately chosen despite the State's concession that Mr. Valdez-Jimenez could not afford to pay it. If the state requires a money-bail amount that a person cannot afford to pay, it has entered the functional equivalent of an order of pretrial detention. An order of pretrial detention must meet exacting procedural and substantive Constitutional restrictions. *Compare United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid *detention* order" (emphasis in original)), *with United States v. Salerno*, 481 U.S. 739 (1987) (describing procedural requirements for a valid detention order, including: a hearing with counsel, legal standards requiring proof of dangerousness by clear and convincing evidence, opportunity to present evidence,

consideration of less restrictive alternative conditions, and reviewable findings). Federal constitutional law allows the state to jail someone pretrial only if, after robust procedures, a court finds that the detainee poses a severe risk to the public or severe risk of flight. "Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether." *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014); *see also In re Humphrey*, 19 Cal. App. 5th 1006, 1029 (Ct. App. 2018), *review granted* 417 P.3d 769 (Cal. 2018); *Brangan v. Commonwealth*, 80 N.E.3d 949, 961 (Mass. 2017).

In this case, the state court not only imposed a money-bail amount that exceed Valdez-Jimenez's means, it imposed that amount in the face of the State's concession that Mr. Valdez-Jimenez could not pay it. The only possible purpose was to detain Mr. Valdez-Jimenez, and as a result he has been detained for ten months. This is so even though no court found that Mr. Valdez-Jimenez poses a danger to the community or a risk of flight. The state's detention of Mr. Valdez-Jimenez because he cannot pay a sum of money violates the United States Constitution.

## II.   BACKGROUND—BAIL IS A MECHANISM OF PRETRIAL RELEASE, NOT PRETRIAL DETENTION

"Bail" is not equivalent to "money bail." "Bail" means *release* before trial. Although common in recent years, the sentence "the Defendant is held on $10,000 bail" is a contradiction: as a historical matter, being "held on bail" was impossible. Timothy R. Schnacke, U.S. Department of Justice—National Institute for Corrections, *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for American Pretrial Reform* 1 (August 2014).[1] As the CATO institute has explained, since well before the Magna

---

[1] *Available at* https://nicic.gov/fundamentals-bail-resource-guide-pretrial-practitioners-and-framework-american-pretrial-reform.

1   Carta, bail has been understood as a device to *free* defendants pretrial. *See* Brief for Amicus

2   Curiae CATO Institute, *Walker v. City of Calhoun, Ga.*, No. 16-10521, at 3 (11th Cir. 2016).[2]

3      "Money bail" is the practice of requiring defendants to forfeit money if they do not appear

4   for trial. Money bail can be either secured or unsecured. A secured money-bail system

5   requires defendants to deposit money before they are released; an unsecured money-bail

6   system allows defendants to be released without depositing any money so long as they

7   promise to pay if they fail to appear.

8      As Chief Judge Rosenthal of the United States District Court for the Southern District of

9   Texas recently summarized in her comprehensive discussion of the history of the American

10  bail system, *ODonnell v. Harris County*, 251 F.Supp.3d 1052, 1068 (S.D. Tex. 2017), *aff'd in*

11  *relevant part* 892 F.3d 147 (5th Cir. 2018), bail originated in medieval England "as a device

12  to free untried prisoners." DANIEL J. FREED & PATRICIA M. WALD, BAIL IN THE UNITED

13  STATES: 1964 1 (1964). The Statute of Westminster, enacted by the English Parliament in

14  1275, listed the offenses that would be bailable and provided criteria for determining whether

15  someone should be released. These criteria included the strength of the evidence against the

16  accused and the severity of the accused's criminal history. *See* June Carbone, *Seeing Through*

17  *the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34

18  SYRACUSE L. REV. 517, 523–26 (1983); Note, *Bail: An Ancient Practice Reexamined*, 70

19  YALE L.J. 966, 966 (1961). In 1679, Parliament adopted the Habeas Corpus Act to ensure that

20  an accused could obtain a timely bail hearing. And the English Bill of Rights, which was

21  enacted in 1679, prohibited excessive bail. *See* Carbone, *supra*, at 528.

22     The American States continued this tradition. Beginning with the Pennsylvania

23  Constitution of 1682, 48 states, including Tennessee, have protected, by constitution or

24  statute, a right to bail "by sufficient sureties, except for capital offenses when the proof is

25  _____

26     [2]*Available at* https://object.cato.org/sites/cato.org/files/pubs/pdf/walker-v-city-of-
    calhoun.pdf.

evident or the presumption great." Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 ARIZ. L. REV. 909, 916 (2013). As Judge Rosenthal explains, "[h]istorians and jurists confirm that from the medieval period until the early American republic, a bail bond was typically based on an individualized assessment of what the arrestee or his surety *could pay* to assure appearance and secure release." *ODonnell*, 251 F. Supp. 3d at 1069 (emphasis added). The court explained the English practice at the time of the ratification of the United States Constitution: "'The rule is, where the offence is prima facie great, to require good bail; moderation nevertheless is to be observed, and such bail only is to be required as the party is able to procure; for otherwise the allowance of bail would be a mere colour for imprisoning the party on the charge.'" *Id.* at 1070 (quoting 1 J. CHITTY, A PRACTICAL TREATISE ON THE CRIMINAL LAW 88–89 (Philadelphia ed. 1819)).

Jurisdictions across America began to depart from the original understanding of bail in the middle of the 20th Century. And the routine use of unaffordable secured money bail without regard to ability to pay resulted in a "crisis." *See United States v. Salerno*, 481 U.S. 739, 742 (1987) (describing "a bail crisis in the federal courts"); Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. PA. L. REV. 959, 960 (1965). Two distinct evils of the secured-money-bail system provoked the crisis: It imperiled public safety by allowing potentially dangerous defendants to be released without any consideration of their dangerousness, and it worked an "invidious discrimination" against those who could not pay. *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 242 (1970).

Responding to this crisis, Attorney General Robert Kennedy led a successful movement to reform bail in the federal courts. Over 50 years ago, Kennedy testified that

[B]ail has become a vehicle for systematic injustice. Every year in this country, thousands of persons are kept in jail for weeks and even months following arrest. They are not yet proven guilty. They may be no more likely to flee than you or I. But, nonetheless, most of them must

1   stay in jail because, to be blunt, they cannot afford to *pay* for their freedom . . . . Plainly our

2   bail system has changed what is a constitutional right into an expensive privilege.

3   Aug. 4, 1964, Testimony on Bail Legislation before the Senate Judiciary Committee

4   (emphasis in original).[3]

5         One of the results of the movement to reform the bail system in the 1960's was the virtual

6   elimination of cash bonds in the District of Columbia and in all Federal courts. The Bail

7   Reform Act "assure[d] that all persons, regardless of their financial status, [would] not

8   needlessly be detained pending their appearance to answer charges . . . when detention serves

9   neither the ends of justice nor the public interest." The Bail Reform Act of 1966, 80 STAT.

10  214 (repealed 1984). In 1984, Congress updated the Bail Reform Act as part of the

11  Comprehensive Crime Control Act. *See* 18 U.S.C. §§ 3141–3150. Federal courts and the

12  courts of the District of Columbia transitioned to a rigorous, evidence-based system of non-

13  financial conditions that remains in place today. If the government believes that a defendant

14  cannot be released pre-trial because he is too dangerous or too likely to flee, the government

15  may seek an order of detention, but only after it has satisfied the court, at a "full-blown

16  adversary hearing," that no condition or combination of conditions could assure the

17  defendant's appearance at trial and the safety of the community. *Salerno*, 481 U.S. at 750.

18  The government may not detain someone merely because she does not have enough money,

19  nor may the government use money to detain *sub rosa* people it believes to be dangerous. 18

20  U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in

21  the pretrial detention of the person."). Although federal courts may detain defendants pending

22  trial, they may not do so without rigorous process. "The federal history of bail reform

23  confirms that bail is a mechanism of pretrial release, not of preventive detention." *ODonnell*,

24  251 F. Supp. 3d at 1074.

25

26        [3]*Available at* http://www.justice.gov/sites/default/files/ag/legacy/2011/01/20/08-04-
    1964.pdf

11

### III.   FACTS

This is a non-violent retail-theft case. On May 12, 2018, Las Vegas Metropolitan Police officers arrested Mr. Valdez-Jimenez based on allegations that he stole leggings from Las Vegas–area Victoria's Secret stores on three occasions, and that he attempted to steal a juicer from a Las Vegas Macy's store on another occasion. (*See* Exhibit A, Temporary Custody Record.) Authorities ultimately charged dual counts of Burglary and Grand Larceny for each legging theft, one count of Burglary for the attempted juicer theft, and a count of Participation in Organized Retail Theft for all of the alleged incidents. (*See* Exhibit E, Criminal Complaint; and Exhibit G, Indictment.)

When he was booked into jail, officers set a money-bail amount for each of the charged crimes.[4] (*See* Exhibit A.) The amount assigned to each charge appeared to be based upon a standardized bail schedule, and it did not account for the overlapping nature of the dual Burglary/Grand Larceny charges and the Organized Retail Theft charge. (*Id.*) The total amount required was $85,000. (*Id.*) Since he could not pay that amount, Mr. Valdez-Jimenez remained jailed following his booking. (*See* Exhibit B, Probable Cause Review Form; Exhibit D, Transcript of May 14, 2018 Proceedings, at 1.)

On May 13, 2018, a justice of the peace found probable cause for Mr. Valdez-Jimenez's arrest and, in his absence, reset his money-bail amount to $40,000 without explanation. (*See* Exhibit B.) Still unable to pay that amount, Mr. Valdez-Jimenez remained jailed as he made his first court appearance the next day. (*Id.*; *see also* Exhibit D, Transcript of May 14, 2018 Proceedings, at 1.) At that initial appearance, the prosecutor, reading from a prepared script, requested 72 hours within which to file a criminal complaint. (*See* Exhibit D,

---

[4] Arresting officers also charged Mr. Valdez-Jimenez with a count of Robbery, which was later omitted from the charging documents.

at 1.) Over defense objection,[5] the court granted the prosecutor's request and continued the matter for two days. (*See* Exhibit D, at 1–2.)

On May 16, 2018, prosecutors filed a complaint charging Mr. Valdez-Jimenez with the offenses set forth above. (*See* Exhibit E.) The Eighth Judicial District Court determined Mr. Valdez-Jimenez to be indigent and appointed the Clark County Public Defender to represent him. (*See* Exhibit F, Transcript of May 16, 2018 Proceedings, at 1.) Defense counsel moved the court to reduce the $40,000 required for Mr. Valdez-Jimenez's release. (*See* Exhibit F, at 1–2.) The court denied the motion and set a preliminary hearing date of May 30, 2018. (*See* Exhibit F, at 1–2.)

On May 24, 2018, the Clark County Grand Jury indicted Mr. Valdez-Jimenez on the charges alleged in the complaint as well as an additional set of Burglary and Grand Larceny charges stemming from another retail-theft allegation. (*See* Exhibit G). At the grand jury return, prosecutors obtained a warrant for Mr. Valdez-Jimenez's arrest from the presiding district court judge. (*See* Exhibit H, Transcript of Grand Jury Return, at 2–3; Exhibit I, Indictment Warrant.) Prosecutors further requested that the warrant fix Mr. Valdez-Jimenez's money bail at $40,000.  (*See* Exhibit H, at 2–3; Exhibit I.) The district court granted the request in Mr. Valdez-Jimenez's absence, and without hearing from him or his counsel. (*See* Exhibit H, at 2–3; Exhibit I.)

On June 5, 2018, Mr. Valdez-Jimenez filed a Motion to Vacate Detention Order and Release Defendant from Custody with the trial court. (*See* Exhibit L, Motion to Vacate Detention Order and Release Defendant from Custody.) In his Motion to Vacate, Mr. Valdez-Jimenez challenged the constitutionality the unattainable money-bail set in his absence at the indictment return. (*Id.*) Among other things, Mr. Valdez-Jimenez argued that he was

_____

[5] The court appointed counsel for the limited purpose of the immediate proceedings. (*See* Exhibit D, at 1-2.)  Defense counsel argued that, in the absence of a complaint, the court lacked jurisdiction to order Mr. Valdez-Jimenez's continued detention and, accordingly, that he should be released from custody.  (*See* Exhibit D, at 1-2.)

subjected to a de facto detention order, which order must have been preceded by an adversarial hearing at which a judge concludes that pretrial detention is the least restrictive means of ensuring Mr. Valdez-Jimenez's return to court and the safety of the community. (*Id.*) Mr. Valdez-Jimenez contended that, absent such an inquiry, requiring $40,000 for his release was unlawful. (*Id.*)

At argument, the prosecutor denied the need for a constitutionally required detention hearing, claiming that such hearings are "federal beasts, not state beasts." (*See* Exhibit N, Transcript of Hearing on Defendant's Motion to Vacate Detention Order and Release Defendant from Custody, at 5.) The prosecutor refused to make the required showing necessary for a pretrial detention order to issue, instead saying "you're not going to hear me ask for preventative detention." (*Id.*) Still, the prosecutor achieved preventive detention: She insisted that the money-bail amount remain at $40,000 despite not contesting Mr. Valdez-Jimenez's representation that he could not pay that amount. (*Id.*) And the court denied his motion. (*Id.* at 10.)

On July 18, 2018, Mr. Valdez-Jimenez filed a Petition for a Writ of Mandamus with the Nevada Supreme Court challenging the constitutionality of his detention. (*See* Exhibit O, Petition for a Writ of Mandamus.) Two months later, on September 13, 2018, the Nevada Supreme Court directed the Clark County District Attorney's Office to file an Answer. (*See* Exhibit P, Order Directing Answer.) On October 3, 2018, prosecutors submitted their Answering Brief.[6] (*See* Exhibit Q, Answer to Petition for Writ of Mandamus.) Five months later, having heard nothing from the Nevada Supreme Court, Mr. Valdez-Jimenez filed a Motion to Expedite Adjudication of his Mandamus Petition. (*See* Exhibit U, Petitioners'

---

[6] On November 9, 2018, Mr. Valdez-Jimenez filed a Motion to Consolidate his Mandamus Petition with two other petitions raising similar issues: *Nathan Grace v. Eighth Jud. Dist. Ct., Nevada Supreme Court Case No. 76947* and *Aaron Frye v. Eighth Jud. Dist. Ct., Nevada Supreme Court Case No. 76845.* (*See* Exhibit S, Petitioner's Motion to Consolidate.) On November 21, 2018, the Nevada Supreme Court granted the Motion. (*See* Exhibit T, Order Granting Motions.)

1   Motion to Expedite Adjudication of Habeas/Mandamus Petitions.) Mr. Valdez-Jimenez

2   reminded the Court of the time-sensitive nature of his Petition. (*Id.*) On March 18, 2019, the

3   Court granted the Motion, indicating that resolution of the Petition would be "expedited to the

4   extent that this court's calendar permits." (*See* Exhibit V, Order Granting Motion.) To date,

5   the Nevada Supreme Court has not ruled on Mr. Valdez-Jimenez's Mandamus Petition, nor

6   has the Court provided any indication (via an oral argument setting or otherwise) that a ruling

7   is imminent. Mr. Valdez-Jimenez remains jailed awaiting trial. He has been incarcerated for

8   more than 10 months.

9        If Mr. Valdez-Jimenez could pay to secure a $40,000 bond, he would walk out of the

10   jail.  Given prevailing practices in the bail-bond industry, he could be released if he could

11   afford between 1% and 10% of that amount up front. He is in a jail cell today because he does

12   not have enough money. The court did not find that releasing Mr. Valdez-Jimenez posed an

13   immitigable risk of flight or a danger to the community. Nor did the court consider whether

14   any other alternative conditions or combinations of conditions (such as home detention and

15   electronic monitoring or other forms of pretrial supervision) could reasonably serve the

16   State's interests. Instead, the court used Mr. Valdez-Jimenez's inability to pay money to enter

17   an order of detention against him.

18   **IV.   STANDARD OF REVIEW**

19        Petitioner brings this action under 28 U.S.C. § 2241 and Article I, Section Nine of the

20   United States Constitution. Petitioner, therefore, need not satisfy the heightened requirements

21   of § 2254. Because he has not been convicted of a crime and is not in custody "pursuant to the

22   judgment of a state court," Petitioner may bring this action under § 2241 and need not bring

23   this action under § 2254, which governs habeas petitions challenging state criminal

24   convictions. *Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004) ("'[T]he general grant of

25   habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody

26   pursuant to a state court judgment—for example, a defendant in pre-trial detention . . . .'"

15

(quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004)). Section 2254's heightened standards of review, therefore, do not apply to this case. *Id.* at 888; *Phillips v. Court of Common Pleas, Hamilton County, Ohio*, 668 F.3d 804, 809 (6th Cir. 2012) ("We have long recognized that pretrial detainees pursue habeas relief . . . under § 2241."); *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 918 (2005); *Atkins v. Michigan*, 644 F.2d 543, 546 & n.1 (6th Cir. 1981). This Court, accordingly, reviews the legal determinations of the state courts, and the constitutional adequacy of the procedures used to make them, de novo. *Stow*, 389 F.3d at 888 ("The significance of th[e] determination [that § 2241 applies] is that . . . we can affirm the district court's [grant of habeas relief] . . . de novo . . . .").

## V.   ARGUMENT

Mr. Valdez-Jimenez's objection to his detention in the Clark County jail is twofold: (1) He is in jail because he cannot pay a secured money-bail amount that was imposed without the required procedural protections (neither the State nor the courts disputed Mr. Valdez-Jimenez's inability to pay); and (2) He is in jail because the state district court entered the functional equivalent of an order of detention and no court has made a procedurally valid finding (indeed, no court has made any explicit finding) that he is dangerous or that he poses a flight risk.

Mr. Valdez-Jimenez's substantive objections to his detention—that detaining him pretrial is not narrowly tailored to forward a compelling government interest—cannot be addressed until his procedural ones are. That is because neither Mr. Valdez-Jimenez nor this Court can know whether the State district court's order of detention complies with the substantive requirements of the Due Process Clause until the required findings are made under the correct substantive and evidentiary standards. Accordingly, Mr. Valdez-Jimenez prays for a conditional writ of habeas corpus ordering his release unless the State seeks a thorough

adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he is a danger to the community and, if so, whether conditions of release exist that could reasonably assure his presence at trial and the safety of the community.

**a.  Jailing Mr. Valdez-Jimenez For Inability to Make a Monetary Payment that the State Concedes He Cannot Make Violates the Equal Protection and Due Process Clauses**

The principle that jailing the poor because they cannot pay a sum of money is unconstitutional has deep roots in American constitutional law. *See Williams v. Illinois*, 399 U.S. 235, 241 (1970) ("[T]he Court has had frequent occasion to reaffirm allegiance to the basic command that justice be applied equally to all persons."); *Douglas v. California*, 372 U.S. 353, 355 (1963) (condemning the "evil" of "discrimination against the indigent"); *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."); *see also Mayer v. City of Chicago*, 404 U.S. 189, 193 (1971).

These principles have been applied in a variety of contexts in which a government jailed people because of their inability to make monetary payments. In *Tate v. Short*, 401 U.S. 395, 398 (1971), the United States Supreme Court held that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." In *Bearden v. Georgia,* 461 U.S. 660, 672–73 (1983), the Court explained that to "deprive [a] probationer of his conditional freedom simply because, through no fault of his own he cannot pay [a] fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment."

For pretrial arrestees, the rights at stake are even more significant because the arrestees' liberty is not diminished by a criminal conviction; they are presumed innocent. Justice Douglas framed the basic question that applies to pre-trial detainees:

> To continue to demand a substantial bond which the defendant is unable to secure raises considerable problems for the equal administration of the law. . . . Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom?

*Bandy v. United States*, 81 S. Ct. 197, 197–98 (1960) (Douglas, J., in chambers).

The Fifth Circuit answered that question in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1977) (en banc). The *en banc* court held that a recently enacted Florida Rule did not on its face require Florida courts to set secured monetary bail for arrestees. But the court explained that if such a thing were to happen to an indigent person, it would be unconstitutional.

> We have no doubt that in the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint.

*Id*. at 1058.[7] "The incarceration of those who cannot [afford a cash payment], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Id*. at 1057.[8] In *ODonnell* the Fifth Circuit reaffirmed the core holding of *Pugh*. 892 F.3d 147. The court concluded that Harris County, Texas's money-bail system was unconstitutional, and that it worked a "basic injustice: poor arrestees in Harris County are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond." *Id*. at 162.

---

[7]*Rainwater* further explained that it refused to require a priority to be given in all cases—including those of the non-indigent—to non-monetary conditions of release. The court noted that, at least for wealthier people, some might actually prefer monetary bail over release with certain other conditions, and that the court would not invalidate a state Rule that allowed for those other conditions in appropriate cases. *Id*. at 1057.

[8]Four circuit judges dissented in *Rainwater*. Although they agreed with the constitutional principles announced by the majority that the Constitution forbids jailing the poor when they cannot afford monetary bail, they were concerned about the majority's faith in the Florida courts not to apply the new state Rule in unconstitutional ways to detain the indigent. *Id*. at 1067 ("I cannot escape the conclusion that the majority has chosen too frail a vessel for such a ponderous cargo of human rights.") (Simpson, J., dissenting).

In this case, the State conceded on the record that Mr. Valdez-Jimenez is indigent and therefore cannot pay the money-bail amount in his case. But, under the Supreme Court's cases described above (which lower courts have explicitly extended to the pre-trial context) the state is permitted to detain someone for failing to pay money only if it makes a procedurally proper finding that he is able to pay. *E.g.*, *Bearden*, 461 U.S. at 672. Therefore, the State cannot justify Mr. Valdez-Jimenez's detention by arguing that he is willfully refusing to pay the sum.

> **b. Jailing Mr. Valdez-Jimenez Pretrial Without a Robust Hearing on, and Specific Findings Concerning, his Dangerousness or Risk of Flight Simply Because He Cannot Pay Secured Money Bail Violates the Due Process Clause**

The right to pretrial liberty is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990) (holding that release prior to trial is a "vital liberty interest").

Because "[f]reedom from bodily restraint is a fundamental liberty interest," any deprivation of that liberty must withstand heightened constitutional scrutiny, which generally requires that the deprivation be narrowly tailored to further a compelling government interest. *See, e.g.*, *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780–81 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to strike down Arizona bail law that required detention after arrest for undocumented immigrants accused of certain offenses). For that reason, the Supreme Court in *Salerno* applied exacting scrutiny to a presumptively innocent person's loss of pretrial liberty and required that the government employ rigorous procedures to protect that liberty. *See*

1  *Salerno*, 481 U.S. at 746 (describing "procedural due process" restrictions on pretrial

2  detention, and citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

3          The procedures challenged in this case violate the Due Process Clause. An order

4  setting unattainable conditions of release is equivalent to an order of detention. *State v.*

5  *Brown*, 338 P.3d 1276, 1292 (N.M. 2014); *United States v. Mantecon-Zayas*, 949 F.2d 548,

6  550 (1st Cir. 1991); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he

7  setting of bond unreachable because of its amount would be tantamount to setting no

8  conditions at all."); *ODonnell*, 251 F. Supp. 3d at 1145 (holding that secured money bail set in

9  amount that an arrestee cannot afford is constitutionally equivalent to an order of detention). It

10 must, therefore, at least survive heightened constitutional scrutiny and, therefore, be narrowly

11 tailored. *See Brown*, 338 P.3d at 1292 ("Intentionally setting bail so high as to be unattainable

12 is simply a less honest method of unlawfully denying bail altogether . If a defendant should

13 be detained pending trial . . ., then that defendant should not be permitted any bail at all.

14 Otherwise the defendant is entitled to release on bail, and excessive bail cannot be required.").

15 To meet that standard, a court must at least find on the record by clear and convincing

16 evidence that the detainee presents a risk of flight or danger to the community and that no

17 conditions or combination of conditions alternative to detention could reasonably mitigate that

18 danger. Because no court has done that for Mr. Valdez-Jimenez, his detention violates the

19 Due Process Clause.

20                    i.  Salerno *and its Progeny Allow Pretrial Detention Only When it*

21                        *Complies with Substantive and Procedural Due Process Principles*

22          In *Salerno*, the United States Supreme Court considered a facial challenge to the

23 federal Bail Reform Act. That Act permits the government to detain people found to be highly

24 dangerous, after an individualized "full-blown adversary hearing," 481 U.S. at 750, and only

25 where the "Government . . . convince[s] a neutral decisionmaker by clear and convincing

26 evidence that no conditions of release can reasonably assure the safety of the community . . .

." *Id.* The Supreme Court subjected the Bail Reform Act to heightened judicial scrutiny,

1  holding that the government may detain individuals before trial only where that detention is

2  carefully limited to serve a "compelling" government interest. *Id.* at 745.

3      *Salerno* imposed two interlocking sets of requirements on preventive detention:

4  substantive and procedural. *Id.* at 746 ("This Court has held that the Due Process Clause

5  protects individuals against two types of government action. So-called 'substantive due

6  process' prevents the government from engaging in conduct that 'shocks the conscience' or

7  interferes with rights 'implicit in the concept of ordered liberty.' When government action

8  depriving a person of life, liberty, or property survives substantive due process scrutiny, it

9  must still be implemented in a fair manner. This requirement has traditionally been referred to

10  as 'procedural' due process." (internal citations omitted)). The procedural requirements are

11  necessary to ensure that the substantive ones have been met.

12      Substantively, *Salerno* required that pretrial detention survive heightened

13  constitutional scrutiny. The government may deprive a presumptively innocent person of his

14  physical liberty only if doing so is tailored to forward a compelling interest. *Id.* at 746–48.

15  Therefore, the government may detain someone pretrial only if other, less restrictive means

16  are unavailable to serve the state's interests.

17      Procedurally, *Salerno* held that orders of detention may be entered after rigorous

18  procedures have been met. These procedures include, but are not necessarily limited to, a

19  "full-blown adversary hearing," *id.* at 750; a heightened evidentiary standard of proof of

20  dangerousness by "clear and convincing evidence," *id.* at 751; consideration of alternative

21  conditions of release, *id.* at 750; and "written findings of fact and a written statement of

22  reasons for a decision to detain," *id.* at 752.  Consistent with its reliance on procedural-due-

23  process cases, *id.* at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)), *Salerno*

24  insists on procedures that are sufficient to ensure that any preventive detention be consistent

25  with *substantive* due process.

26

Following *Salerno*, courts across the country have made clear that pre-trial detention regimes must be consistent with both procedural and substantive due process. *See Simpson v. Miller*, 387 P.3d 1270, 1276 (Ariz. 2017) ("[I]t is clear from *Salerno* and other decisions that the constitutionality of a pretrial detention scheme turns on whether particular procedures satisfy substantive due process standards."); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to strike down an Arizona law that required detention after arrest without individualized consideration of an arrestee's circumstances); *ODonnell*, 251 F. Supp. 3d at 1055. And to detain a person absent a criminal trial, the Supreme Court has consistently required that courts support that detention with clear and convincing evidence. *See Addington v. Texas*, 441 U.S. 418, 433 (1979); *see also Kleinbart v. United States*, 604 A.2d 861, 868 (D.C. 1992) (interpreting *Salerno* to require clear and convincing evidence for detentions based on dangerousness and risk of flight). Indeed, no Supreme Court case to consider the required standard of proof under the Due Process Clause has held that a deprivation of bodily liberty can be made if it is supported by a mere preponderance of the evidence.

In *Lopez-Valenzuela*, the Ninth Circuit considered an Arizona law categorically jailing any arrestee who was an undocumented immigrant to the United States. The court applied "strict scrutiny" to the Arizona law, relying on *Salerno*. 770 F.3d at 786. Under strict scrutiny, the court concluded, the law could not survive. "Whether a categorical denial of bail for noncapital offenses could *ever* withstand heightened scrutiny is an open question," the court noted. *Id.* at 785 (emphasis added). But the court concluded that a blanket prohibition on pretrial release for undocumented immigrants clearly could not survive heightened scrutiny. *Id.* To detain a presumptively innocent person prior to trial, the court reasoned, the state must offer convincing—and almost always individualized—rationales. *See id.* at 786.

/ / /

/ / /

ii. *An Unattainable Money Bail Amount is Equivalent to an Order of Detention*

Courts across the country agree that requiring money bail in an amount that a defendant cannot afford is equivalent to ordering him detained pretrial. "Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether." *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014).

Federal courts have unanimously held that monetary conditions of "release" that result in detention are equivalent to orders of detention and, therefore, must meet the exacting procedural and substantive requirements for orders of detention. *Mantecon-Zayas*, 949 F.2d at 550; *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (explaining that when no attainable conditions of release can be implemented, and the defendant must be detained pending trial, "the court must explain its reasons for concluding that the particular financial requirement is a necessary part of the conditions for release"); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell*, 251 F. Supp. 3d at 1145 (holding that secured money bail set in an amount that an arrestee cannot afford is constitutionally equivalent to an order of detention).

The reasoning here is easy to understand. For Mr. Valdez-Jimenez—whom the state court found to be indigent—a money bail amount of $40,000 is equivalent to a money bail amount of $40,000,000: these conditions are strictly impossible from him to meet. Setting an impossible condition of release is the functional equivalent of setting no condition at all and, therefore, ordering pretrial detention.

iii. *Because No Court Has Properly Found Mr. Valdez-Jimenez to Be Dangerous or at Risk of Flight, the Order of Detention Violates the Due Process Clause*

As explained above, the Due Process Clause imposes strict substantive and procedural requirements on pretrial detention. In Mr. Valdez-Jimenez's case, the state district court did

1   not make constitutionally adequate findings on the record about his dangerousness or risk of

2   flight. Instead, the court ordered him detained by doing what Clark County courts have done

3   for years: selecting a money-bail number that supposedly relates to a charged crime and an

4   accused's background, but that does not consider his ability to pay at all. If this Court issues

5   the writ requested by Mr. Valdez-Jimenez, the State will have the opportunity to seek an order

6   of detention against Mr. Valdez-Jimenez at a constitutionally adequate hearing. But as this

7   case stands, Mr. Valdez-Jimenez's detention does not comply with the procedural

8   requirements of the Due Process Clause.

9        The state district court did not explain its reasoning for jailing Mr. Valdez-Jimenez

10  beyond stating that Nevada's statutory bail scheme does not mirror its federal counterpart and

11  that, under Nevada law, Mr. Valdez-Jimenez "is being provided both substantive and

12  procedural due process." The court made no specific findings regarding the need for Mr.

13  Valdez-Jimenez's detention or, conversely, the absence of less restrictive means of ensuring

14  community safety and Mr. Valdez-Jimenez's return to court. This alone is sufficient to

15  condemn the court's decision under the Due Process Clause. When issuing an order of

16  detention, a court must at least state its reasons on the record. *See Mantecon-Zayas*, 949 F.2d

17  at 551 (citing *Salerno* as holding that "procedural safeguards, including requirement of

18  written findings and reasons, [were] sufficient to repel facial due process challenge to Bail

19  Reform Act"); *see also Morrissey v. Brewer*, 408 U.S. 471, 491 (1972) (Brennan, J.,

20  concurring).

21       Regardless, the court flatly rejected application of the constitutionally required

22  detention inquiry in favor of the protocol utilized for years in Clark County. The court refused

23  to require prosecutors to demonstrate the need for pretrial detention. The court did not hear

24  evidence about, nor consider on the record, the suitability of non-financial conditions of

25  release such as electronic monitoring or house arrest. Accordingly, the court allowed Mr.

26  Valdez-Jimenez's detention order to stand despite never finding that he posed an immitigable

flight risk and danger to the community. Absent such a finding, the court had no constitutionally sufficient basis on which to detain Mr. Valdez-Jimenez and, therefore, a writ of habeas corpus should issue ordering his release unless the State seeks a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he is a danger to the community and risk of flight, and, if so, whether conditions of release exist that could reasonably assure Mr. Valdez-Jimenez's presence at trial and the safety of the community.

## VI.   CONCLUSION

For the foregoing reasons, Petitioner Jose Valdez-Jimenez respectfully requests that the Court issue a writ of habeas corpus ordering his unless the State seeks a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he is a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Valdez-Jimenez's presence at trial and the safety of the community.

*/s/ Charles Gerstein*
Charles Gerstein (*pro hac vice* application forthcoming)
(DC Bar No. 1033346)
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809

*/s/ Nancy M. Lemcke*
Nancy M. Lemcke, Deputy Public Defender
Christy L. Craig, Deputy Public Defender
Clark County Public Defender
309 S. Third Street, Second Floor
Las Vegas, Nevada 89144
lemckenl@clarkcountynv.gov
craigcl@clarkcountynv.gov
(702) 455-5039
(702) 455-2728

*Attorneys for Petitioner*