Charles Gerstein
(*pro hac vice*)
Olevia Boykin
(*pro hac vice*)
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809

Nancy M. Lemcke, Deputy Public Defender
Clark County Public Defender
309 S. Third Street, Second Floor
Las Vegas, Nevada 89144
lemckenl@clarkcountynv.gov
(702) 455-5039

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

JOSE VALDEZ-JIMENEZ,

Petitioner,

SHERIFF JOSEPH LOMBARDO, Clark County Sheriff,

Respondent.

Case No. 2:19-CV-581

**REPLY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

I.      There Is No Procedural Obstacle to This Court's Consideration of This Case ..................2

        A.      *Younger* Does Not Apply.......................................................................2

        B.      The Exhaustion Doctrine Poses No Barrier to This Court's Consideration
                of This Case .........................................................................................4

                1.      Petitioner's District-Court Motion Exhausted State Remedies
                        Because Nevada Law Provides No Ordinary Remedy Beyond the
                        District Court for Pretrial Bail Issues.........................................4

                2.      Exhaustion Is Excused Because the State Courts Unreasonably
                        Delayed Considering Petitioner's Case ......................................8

II.     Respondent Is Jailing Petitioner in Violation of the Constitution ......................................9

        A.      An Unattainable Money-Bail Order is an Order of Detention.............................10

        B.      The Constitution—Not the Bail Reform Act—Requires State Courts to
                Employ Robust Procedures, Including Findings by Clear and Convincing
                Evidence, To Enter an Order of Detention .........................................................11

                1.      *Salerno* Imposed Due-Process Requirements on Pretrial Detention
                        and Petitioner is Not Required to Proceed Under the Eighth
                        Amendment........................................................................11

                2.      The Constitution Requires More than Merely a Non-Arbitrary
                        State-Court Decision...........................................................14

                3.      The Constitution Requires Clear and Convincing Evidence to
                        Detain a Person Pretrial ......................................................15

        C.      The State Courts Heard No Evidence and Made No Findings .............................19

        D.      Petitioner Does Not Challenge Nevada's Statutory Bail Scheme, Which
                Permits But Does Not Require Unconstitutional Detention .................................20

III.    Conclusion ..................................................................................................................20

Petitioner Jose Valdez-Jimenez is in a Clark County jail cell. Respondent, Sheriff Joseph Lombardo, would release Petitioner if he could pay $40,000. He cannot pay $40,000, and so he remains in jail. No court has found—let alone found by clear and convincing evidence—that Petitioner poses a risk of flight or danger to the community. Respondent is therefore jailing Petitioner in violation of the Constitution of the United States, and this Court should issue a writ of habeas corpus.

Petitioner's Constitutional claim is straightforward: The Due Process Clause requires certain procedures before a court may order a person jailed pending a criminal trial. An order requiring a person to satisfy an impossible condition to be released is an order that the person be detained. And, therefore, when the district court ordered Petitioner released only if he pays a sum of money that he cannot pay, the district court ordered him detained. Because the district court did not even come close to satisfying the procedural requirements of the Due Process Clause, its order of detention is illegal.

Respondent mischaracterizes this claim and the law that governs it. He argues that the Bail Reform Act does not apply in state courts and, therefore, that the state courts' procedures are adequate; but the *Constitution* applies in state courts, and the state courts' procedures here were woefully inadequate to satisfy its requirements. He argues that a money-bail order that someone cannot pay is somehow different than an order of detention even though every court to have considered that question has ruled, consistent with elementary common sense, that ordering people released if something impossible happens is the same as ordering them detained. And he argues that the state courts found, *sub silentio*, that releasing Petitioner would risk flight or danger—despite receiving *no* evidence on those questions and making *no* explicit findings—because Nevada's statutory scheme required the district court to consider a host of factors including risk of flight or danger. All the while, Respondent relies on his counsel's unsworn assertions to supplement a record bereft of evidence against Petitioner rather than do what the Constitution requires and present that evidence to Petitioner's face and allow him to confront it. Respondent's arguments fail.

Unable to defend the state courts' actions on the merits, Respondent argues that *Younger*

*v. Harris* bars this Court's consideration of this case. But Respondent neglects to mention binding Ninth Circuit precedent holding that *Younger* does not apply to pretrial habeas challenges to unaffordable money-bail orders. *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018). And Respondent failed to raise—and therefore forfeited—the affirmative defense of exhaustion, which would have failed anyway because Petitioner exhausted state remedies when he filed a bail-reduction motion in district court, and Nevada's mandamus procedure is inadequate to protect Petitioner's rights in this case. Petitioner has been in jail for almost a year based on unproven allegations of shoplifting. Respondent would have him wait indefinitely for relief in state court.[1] Thankfully, the law does not allow—let alone require—such a result, and so this Court should grant the writ of habeas corpus.

## I.   There Is No Procedural Obstacle to This Court's Consideration of This Case

Respondent argues that this Court must abstain from hearing this case under *Younger v. Harris*, 401 U.S. 37 (1971). But, in *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018), the Ninth Circuit held that *Younger* does not apply to pretrial habeas challenges to state-court money-bail orders. The only plausibly material difference between this case and *Arevalo* is that here Petitioner filed a petition for extraordinary relief in the state courts. That distinction is immaterial to the *Younger* question because—as the *Arevalo* court explained—*Younger* does not apply to issues collateral to the merits of the state prosecution itself. Further, Petitioner need not have filed a mandamus petition and can withdraw his petition at any time. And the exhaustion doctrine does not bar this Court's consideration of this case because (1) Petitioner exhausted state remedies when he filed a motion for release in the district court, and (2) exhaustion should be excused because the state courts' delay renders it futile. This Court should consider this case on the merits.

### A.   *Younger* Does Not Apply

Respondent argues that *Younger* requires this Court to abstain from hearing this case.

---

[1] Respondent contends that Petitioner waived his statutory speedy trial right "in order to pursue relief before the Supreme Court of Nevada." (Doc. 14 at 6.) This statement is incomplete. To challenge the sufficiency of an indictment on pre-conviction appeal under Nevada law, appellants must waive their speedy trial rights. *See* Nev. Rev. Stat. Ann. § 34.700.1(b)(1) (West 2019). Petitioner in this case indeed waived his speedy trial rights, but did not do so in order to—that is, for the purpose of—pursuing relief in the state courts. Petitioner's criminal counsel advises that Petitioner would have waived his speedy trial right regardless. Regardless this point is irrelevant.

Respondent's *Younger* argument is squarely foreclosed by the Ninth Circuit's holding in *Arevalo*, 882 F.3d at 766, which Respondent does not cite, let alone distinguish. This Court should not abstain from hearing this case.

Abstention is an exceptional doctrine to be applied narrowly. *See Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 77 (2013) ("Jurisdiction existing, this Court has cautioned, a federal court's obligation to hear and decide a case is virtually unflagging." (internal quotation marks omitted)). *Younger* abstention requires (1) that there be the potential for undue interference with an ongoing state court proceeding; (2) that an important state interest be implicated by that proceeding; *and* (3) that there be an adequate opportunity to raise the relevant claim in that proceeding. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 433 n.12 (1982). Courts do not abstain where irreparable harm would result. *See World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987).

In *Arevalo*, the Ninth Circuit reviewed a district court's decision to abstain from considering a pretrial habeas petition, brought under § 2241, challenging the constitutionality of a San Francisco Superior Court money-bail order that resulted in the petitioner's detention. 882 F.3d at 766. The Ninth Circuit held that *Younger* did not apply for two reasons: (1) constitutional bail issues are collateral to the merits of criminal proceedings and, therefore, do not interfere with *those proceedings*, *id.*; and (2) because pretrial detention works irreparable harm on the detainee, pretrial bail cases fall within the Supreme Court's exception for irreparable harm, *id.* at 766–67.

Both holdings apply here. Although Petitioner raised his constitutional objections through a petition for a writ of mandamus, that petition is collateral to the merits under *Arevalo* and, therefore, irrelevant to the *Younger* question here.[2] The Circuit explained that *Younger* applies only to federal claims that would interfere with a state prosecution itself: "[B]ecause the question of whether the petitioner is entitled to a constitutional bail hearing is separate from the state prosecution, and would not interfere with *those* proceedings, *Younger* abstention is not appropriate." *Arevalo*, 882 F.3d at 766 (emphasis added). And Petitioner suffers irreparable harm

---

[2] If this Court is inclined to abstain in favor of Petitioner's state-court mandamus action—a decision Petitioner believes is not permitted, let alone compelled, by law—Petitioner with will withdraw the mandamus. In that event, this case would be indistinguishable from *Arevalo*.

every day, just as the petitioner in *Arevalo* did. *Id.* at 767. Indeed, this case is covered by *Arevalo a fortiori*. The Court in *Arevalo* wrote that "the petitioner has been incarcerated for over six months without a constitutionally adequate bail hearing. His case easily falls within the irreparable harm exception to *Younger*." *Id.* Here, Petitioner has been incarcerated for almost *eleven* months without a constitutionally adequate bail hearing. This Court should not abstain from hearing this case.

**B. The Exhaustion Doctrine Poses No Barrier to This Court's Consideration of This Case**

Respondent did not raise—and therefore forfeited—the affirmative defense of exhaustion.[3] But because *Younger* and exhaustion are at least tangentially related issues, and because this Court has discretion to consider exhaustion notwithstanding Respondent's forfeiture, this Memorandum addresses the question of exhaustion out of an abundance of caution. Petitioner has exhausted his claims in state court or, alternatively, exhaustion should be excused on the ground that it is futile.

**1. Petitioner's District-Court Motion Exhausted State Remedies Because Nevada Law Provides No Ordinary Remedy Beyond the District Court for Pretrial Bail Issues**

Petitioner's motion for release in the district court exhausted state remedies because, under Nevada law, an arrestee has no right to appeal from an adverse bail determination, *O'Donnell v. State*, No. 67894, 2015 WL 3884360, at *1 (Nev. June 22, 2015) ("No statute or court rule provides for an appeal from a district court order denying a motion for bail."), and the only remaining recourse is mandamus, which the United States Supreme Court has specifically described as unnecessary for exhaustion, *Wilwording v. Swenson*, 404 U.S. 249, 249–50 (1971) (overruling Court of Appeals decision that exhaustion "had not been satisfied because petitioners had not invoked . . . mandamus . . . ."), *superseded by statute on other grounds as recognized in Woodford v. Ngo*, 548 U.S. 81 (2006). Indeed, the State *itself* argued in state court that mandamus is "extraordinary" and that Petitioner has already availed himself of his only remedy at law by

---

[3] Exhaustion is an affirmative defense that may be forfeited when respondents fail to raise it in their answers. In *Granberry v. Greer*, 481 U.S. 129, 134 (1987), the Supreme Court held that where a respondent fails to raise exhaustion in federal district court, that defense is generally waived subject to an appellate court's discretion to consider it as circumstances require. (Although Congress amended § 2254 to preclude unintentional waiver, Congress left § 2241 intact.) Here, Respondent's waiver should not be excused. Respondent cited a case in which both *Younger* and exhaustion were relevant issues, and yet chose to raise only the former, suggesting a conscious choice rather than an accidental omission. (Doc. 14 at 10 (citing *Robinson v. Sniff*, No. EDCV 09-0033-DDPRC, 2009 WL 1037716, at *2 (C.D. Cal. Apr. 17, 2009)).

4

moving in the district court. (Pet. App'x, Doc. 3 at 122–23).

Federal courts apply a judge-made exhaustion doctrine in § 2241 cases. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490 (1973). Unlike the statutory exhaustion requirement in § 2254, though, the judge-made exhaustion requirement for § 2241 petitions is prudential, flexible, and non-jurisdictional. *See, e.g. Santiago-Lugo v. Warden*, 785 F.3d 467, 474 (11th Cir. 2015). The Supreme Court has described the exhaustion doctrine in § 2241 cases as a "judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.'" *Braden*, 410 U.S. at 490 (citation omitted). Courts, accordingly, apply it with those dual purposes in mind. *See, e.g.*, *Park v. Thompson*, 356 F. Supp. 783, 788 (D. Haw. 1973) ("It is the legal issues that are to be exhausted, not the petitioner.").

To exhaust state remedies, a petitioner need only invoke "one complete round" of the "normal, simple, and established part[s] of the State's appellate review process," *O'Sullivan*, 526 U.S. at 845; he need not resort to "extraordinary procedures," *id.* In *O'Sullivan*, the United States Supreme Court explained that a petitioner seeking habeas relief from the adverse judgment of an Illinois court must petition that state's supreme court for discretionary review, 526 U.S. at 840; the Illinois Supreme Court's "discretionary control over its docket" did not alone relieve petitioners of the obligation to invoke that discretion to exhaust state remedies, *id.* at 843. This is true, the Court held, because "state prisoners have the right to raise their claims through a petition for discretionary review in the State's highest court," *id.* at 845 (alterations and quotation marks omitted), and because "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process," *id.* Petitioners need not resort to "extraordinary procedures." *Id.*

To explain what sorts of procedures are "extraordinary," the *O'Sullivan* Court referred to *Wilwording*, 404 U.S. 249. In *Wilwording*, the Court overruled a Court of Appeals decision that a habeas petitioner had not exhausted state remedies because he "had not invoked any of a number of possible alternatives to state habeas including a suit for injunction, a writ of prohibition, or

mandamus or a declaratory judgment in the state courts." *Id.* at 249–50. The Court explained that resort to a remedy—even a remedy not explicitly described as "extraordinary"— that a state court has never used to grant the relief a petitioner seeks in federal court is unnecessary for exhaustion. *Id.* at 250 ("Furthermore, we are not referred to a single instance, regardless of the remedy invoked, in which the Missouri courts have granted a hearing to state prisoners on the conditions of their confinement."). The Court held that the petitioner in *Wilwording* exhausted state remedies even though he did not seek mandamus in the state courts. *Id.*

*O'Sullivan* and *Wilwording* give states control over what is necessary for exhaustion: state courts are free to define a particular remedy as "extraordinary," and thereby remove it from the process that state petitioners must exhaust before going to federal court. *See O'Sullivan*, 546 U.S. at 849–50 (Souter, J., concurring) (explaining that petitioners may skip procedures occasionally employed for relief wherever states define them as unnecessary). The exhaustion requirement is meant to protect state courts' ability to correct errors of federal law themselves. States, accordingly, decide how many opportunities for correction are reasonable. Under *O'Sullivan*, petitioners need not avail themselves of a state procedure whenever one of the following conditions is met: (1) state courts explicitly define a procedure as unnecessary for exhaustion, (2) state courts describe a procedure as "extraordinary," or (3) state courts do not in practice use a procedure to grant the relief sought in federal court.

First, Nevada courts have made clear through a pair of doctrines that the district court is the last stop for reviewing pretrial bail issues. In *Lopez v. Eight Judicial District Court*, the Nevada Supreme Court declined even to consider a mandamus petition "[b]ecause [the petitioner] has an adequate remedy at law by way of a motion to reduce bail and direct appeal *should he be convicted*." 373 P.3d 937, at *1 (Nev. 2011) (unpublished) (emphasis added). But after conviction a petitioner cannot obtain relief from *pretrial* detention; the only relief available is reversal of the conviction, and only then after showing that pretrial detention affected a criminal judgment. *See, e.g.*, *Brown v. State*, 934 P.2d 235, 240–41 (Nev. 1997) (reviewing district court's bail determination on post-judgment appeal for whether the pretrial detention affected criminal judgment). And once petitioners are released from pretrial custody, the Nevada Supreme Court

6

treats their petitions as moot. *E.g.*, *Black v. Eighth Judicial District Court*, 425 P.3d 717, *1 (Nev. 2018) (unpublished). Nevada law, therefore, provides no mechanism beyond the district court to review bail decisions prejudgment.

Second, the Nevada courts do not, in fact, use mandamus to review trial-court bail determinations. *Camp v. Eighth Judicial District Court*, No. 70207, 2016 WL 3418967, at *1 (Nev. June 17, 2016) (declining to exercise mandamus jurisdiction in bail case); *Turpin v. Eighth Judicial District Court*, No. 66315, 2014 WL 4674376, at *1 (Nev. Sept. 18, 2014) (same); *Mooneyhan v. Second Judicial District Court*, No. 77467-COA, 2018 WL 6721349, at *1 (Nev. App. Dec. 19, 2018); *Wright v. Eighth Judicial District*, No. 72939, 2017 WL 3709043, at *1 (Nev. App. Aug. 16, 2017); *Fuentes v. Second Judicial District Court*, No. 72041, 2017 WL 896011, at *1 (Nev. App. Feb. 23, 2017). After a diligent search, undersigned counsel has found exactly one instance since 1864 (when the Nevada Supreme Court was founded) in which the court granted a writ of mandamus to review a trial-court bail determination—and that instance is, in every sense of the word, "extraordinary."[4] Under *Wilwording*, then, Petitioner need not invoke Nevada mandamus to exhaust state remedies because the state courts never use mandamus to grant the relief Petitioner seeks.

Finally, mandamus under Nevada law is unmistakably extraordinary. The Nevada Supreme Court has specifically described it as such. *See, e.g.*, *Archon Corp. v. Eighth Judicial District Court*, 407 P.3d 702, 706 (Nev. 2017) ("A writ of mandamus is not a substitute for an appeal. . . . [M]andamus is an extraordinary remedy, reserved for extraordinary causes." (citations omitted)); *Winkle v. Foster*, 269 P.3d 898, 899 (Nev. 2011) ("A writ of mandamus is an extraordinary remedy."); *Camp*, 2016 WL 3418967; *Turpin*, 2014 WL 4674376. In fact, Nevada courts entertain mandamus petitions in the bail context only to control the "manifest abuse and

---

[4] In *Perez v. The Eighth Judicial District Court*, No. 62733 (Nev. April 9, 2013) (attached as Exhibit A), the Supreme Court of Nevada issued a writ of mandamus against a district judge who increased the money required for petitioner's release from $3,000 to $1,000,000 because, despite petitioner's unbroken record of appearance at court hearings in the case over more than a year, the judge believed petitioner's "attitude" justified his jailing. *Id.* at 1. "After petitioner *thanked* the district court for appointing new counsel, the district court informed the petitioner 'You're remanded. Thank you. An attitude like that, you can sit in jail.'" *Id.* at 2 (emphasis added). The Nevada Supreme Court concluded that the district court "manifestly abused its discretion," vacated the district court's order, and remanded with instructions that the district court reinstate the original money-bail amount. *Id.* at 3–4.

arbitrary or capricious exercise of discretion" by trial courts, *Turpin*, 2014 WLL 4674376, at *1, which the Nevada Supreme Court has explained is a standard well beyond ordinary review for abuse of discretion, *see State v. Dist. Ct. (Armstrong)*, 267 P.3d 777, 780 (Nev. 2011). Mandamus is extraordinary under Nevada law; Petitioner need not have invoked it to exhaust state remedies.

### 2. Exhaustion Is Excused Because the State Courts Unreasonably Delayed Considering Petitioner's Case

Even if Petitioner were required to seek mandamus to exhaust state remedies, exhaustion should be excused. Petitioner suffers irreparable harm each day he sits in jail awaiting one hearing to which he is entitled under the Constitution. Petitioner's mandamus case has been pending in the Nevada Supreme Court for eight months. That Court has taken no action on his petition, and there is no sign that action is imminent. "At this point, justice delayed is justice denied." *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990).

First, because the state court has had a full and fair opportunity to resolve Petitioner's claims, the purpose of the exhaustion doctrine—which is prudential, not jurisdictional, *Granberry v. Greer*, 481 U.S. 129 (1987)—has been met. The exhaustion requirement "is essentially a matter of federalism and comity," and where, as here, the state has had ample opportunity to review Petitioner's claim and its decision regarding that claim is final in practice, comity concerns are "practically nonexistent." *See Phillips v. Vasquez*, 56 F.3d 1030 (9th Cir. 1995); *Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991) ("[T]he principle of comity weighs less heavily [when] the state has had an ample opportunity to pass upon the matter and has failed to sufficiently explain its . . . delay."); *Harris v. Champion*, 15 F.3d 1538, 1555 (10th Cir. 1994) ("[T]he concept of federal-state comity involves mutuality of responsibilities, and an unacted upon responsibility can relieve one comity partner from continuous deference").

Further, federal courts "have the discretion to dispense with the [exhaustion] rule in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993); *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (exhaustion requirement is satisfied if "available remedies provide no genuine opportunity for adequate relief" or if "irreparable injury may occur without immediate judicial relief" (quotations omitted)). Such is the case here. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir.

8

2017) ("Plaintiffs have established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time."). As the Supreme Court has explained, claims alleging illegal pretrial detention must be adjudicated promptly: Because a "claim to pretrial bail [is] moot" upon either acquittal or conviction, *Murphy v. Hunt*, 455 U.S. 478, 481 (1982), "[r]elief in this type of case must be speedy if it is to be effective," *Stack v. Boyle*, 342 U.S. 1, 4 (1951); *accord id.* at 12 (Jackson, J., concurring) ("[U]nless it can be reviewed before sentence, it never can be reviewed at all."). The writ of habeas corpus, which is meant to be a "*swift* and imperative remedy," *Braden*, 410 U.S. at 490 (emphasis added), is now the only way for Petitioner to avoid further irreparable harm, *ODonnell*, 251 F. Supp. 3d at 1168.

Courts adjudicating exhaustion questions in habeas cases have long held that petitioners need not wait indefinitely for state courts to decide constitutional questions. *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970) ("We believe a seventeen-month delay merits an investigation by the district court."); *Smith v. Kansas*, 356 F.2d 654 (10th Cir. 1966) (excusing exhaustion after one-year delay); *Phillips v. Vasquez*, 56 F.3d 1030 (9th Cir. 1995) ("When a state handles his case in a glacial fashion, a prisoner need not wait for global warming to set in.").[5] Accordingly, exhaustion should be excused where there is "no end in sight" to the state's delay, and where an "indeterminate period" of further delay awaits, *Phillips v. Vasquez*, 56 F.3d 1030 (9th Cir. 1995). Absent relief from this Court, and like the petitioners in *Harris* and *Phillips*, there is no relief in sight for Mr. Valdez-Jimenez.

**II. Respondent Is Jailing Petitioner in Violation of the Constitution**

The State may jail someone for not paying money only if (1) it has made a procedurally valid finding that he is able to pay the money and is willfully refusing to, *see Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983); *see also Turner v. Rogers*, 564 U.S. 431, 442 (2011); or (2) it has

---

[5] Although cases finding inordinate delays have usually addressed periods of time longer than the instant case, *see Harris v. Champion*, 15 F.3d 1538, 1555 (10th Cir. 1994) (collecting cases), those cases address *post-conviction* habeas petitions, where the balance between the petitioner's liberty and the state courts' interest in adjudicating petitions is markedly different. *See* (Mot. Support of Emergency Consideration, Doc. 5 (explaining irreparable harm inflicted on Petitioner), *Harris v. Champion,* 15 F.3d at 1555 (holding that "that the state appellate process should be presumed to be ineffective and, therefore, exhaustion should presumptively be excused, when a petitioner's direct criminal appeal has been pending for two years without resolution absent a constitutionally sufficient justification by the State.").

made a procedurally valid finding that he poses a risk of flight or danger to the community that no alternatives short of pretrial incapacitation could reasonably mitigate, *United States v. Salerno*, 481 U.S. 739, 750 (1987); *see also State v. Brown*, 338 P.3d 1276 (N.M. 2014).[6]

Petitioner cannot pay $40,000 and, therefore, the state cannot justify jailing him on the ground that he is willfully refusing to pay it. Although Respondent somehow contends that the state has not conceded Petitioner's inability to pay money even though the state never introduced a scintilla of evidence concerning his ability to do so, there can be no doubt whatsoever in this Court that Petitioner cannot pay. His verified pleadings are taken as true at this stage of the case, *see* Charles Alan Wright, *et al.*, *Procedure for Habeas Corpus—In General—Conduct of Action*, *in* 17B Fed. Prac. & Proc. Juris. § 4268.4 & n.20 (3d ed. 2019), and he pleads that he is unable to pay the money required for his release, (Doc. 1 ¶ 35 ("Mr. Valdez-Jimenez cannot afford to pay to secure a $40,000 bond.)). There is also no remotely plausible alternative explanation for why Petitioner remains in jail. Petitioner cannot pay to secure his release.

### A. An Unattainable Money-Bail Order is an Order of Detention

Respondent argues that "the state district court has not actually entered an order of pretrial detention." (Doc. 14 at 13 (quotation marks and alterations omitted).) Respondent does not support this assertion with reasoning, and for good reason: it does not make sense. From the perspective of someone, like Petitioner, who cannot pay it, a money-bail order of $40,000 is indistinguishable from a money-bail order of $40,000,000, and from an order of detention. For this reason, courts across the country have ruled that money-bail orders that require amounts beyond arrestees' means are equivalent to orders of detention. *State v. Brown*, 338 P.3d 1276 (N.M. 2014); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *United States v. Leathers*, 412 F.2d 169, 171

---

[6] The question whether a state may use the fiction of unaffordable secured money bail to enter an order of detention that state law would have forbidden it to enter explicitly—which is what the State did here—is not presented on this Petition. As Petitioner explained in his initial memorandum, a bail order is an order of *release*, not detention. It is, therefore, a fiction to call the order in this case a "bail order"; it is an order of detention. If the State wants to enter an order of detention, it should enter one. *See Brown*, ("Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether . . . . If a defendant should be detained pending trial . . ., then that defendant should not be permitted any bail at all. Otherwise the defendant is entitled to release on bail."). Here the State did not comply with the constitutional requirements for an order of pretrial detention, whether it be de facto or explicit, so the Court need not address this question.

(D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell*, 251 F. Supp. 3d at 1145. Respondent does not address, let alone persuasively distinguish, these cases on this point. The state courts in this case entered an order of detention.

**B.  The Constitution—Not the Bail Reform Act—Requires State Courts to Employ Robust Procedures, Including Findings by Clear and Convincing Evidence, To Enter an Order of Detention**

Respondent argues that "the federal Bail Reform Act and its procedures do not apply in Nevada state courts" (Doc. 14 at 12) and, therefore, that "Petitioner was not entitled to findings by clear and convincing evidence about whether he poses a risk of flight or a danger to the community and, if so, whether conditions of release exist that could reasonably assure his presence at trial and the safety of the community" (Doc. 14 at 11). Respondent contends that "federal courts have rejected the argument that *Salerno* and the federal Bail Reform Act set the due process standard" in bail cases. (Doc. 14 at 12.) But Petitioner does not contend that the Bail Reform Act applies in state court, and Respondent is wrong to deny that federal (and state) courts have applied *Salerno* to state-court bail decisions. And although the question of what evidentiary standard applies when state courts require unaffordable money-bail amounts is an open one in the federal courts of appeals, Supreme Court and lower-court precedent mandates that clear and convincing evidence support a decision to detain an arrestee pretrial.

**1.  *Salerno* Imposed Due-Process Requirements on Pretrial Detention and Petitioner is Not Required to Proceed Under the Eighth Amendment**

The Bail Reform Act does not apply in state courts, but the Constitution does, and courts across the country have made clear that *Salerno* explains the standards it requires. *E.g., In re Humphrey*, 19 Cal. App. 5th 1006, 1029 (Ct. App. 2018), *review granted* 417 P.3d 769 (Cal. 2018); *Simpson v. Miller*, 387 P.3d 1270, 1276 (Ariz. 2017) ("[I]t is clear from *Salerno* and other decisions that the constitutionality of a pretrial detention scheme turns on whether particular procedures satisfy substantive due process standards."); *Brangan v. Commonwealth*, 80 N.E.3d 949, 961 (Mass. 2017); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (applying strict scrutiny under *Salerno* to strike down an Arizona law that required detention after arrest without individualized consideration of an arrestee's circumstances); *Kleinbart v. United*

11

1   *States*, 604 A.2d 861, 868 (D.C. 1992); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 313 (E.D. La.

2   2018).[7] Respondent, then, is wrong to contend that Nevada law alone governs the detention of

3   individuals in Nevada courts. The Constitution does that too.

4        Respondent appears to argue that no formal findings of any kind are required to detain a

5   person prior to a criminal trial. (*E.g.*, Doc. 14 at 12.) But even one of the cases he relies on to

6   support that proposition rejects it. In *Weatherspoon v. Oldham*, No. 17-CV-2535-SHM-CGC, 2018

7   WL 1053548, at *6 (W.D. Tenn. Feb. 26, 2018), the court considered a federal habeas challenge

8   to an unaffordable money-bail order. Relying on *Salerno*, the court held that "[w]hen an indigent

9   arrestee faces the possibility of pretrial detention or its functional equivalent, courts have held that

10  the minimum process a state must provide is an opportunity to determine whether no condition or

11  combination of conditions of release could satisfy the purposes of bail: to assure the defendant's

12  appearance at trial or hearing and the safety of the public." *Id.* Although the court rejected

13  petitioner's argument on the clear-and-convincing-evidence standard (discussed below), the court,

14  faced with a very similar record to the record here—complete with a state court relying on only

15  state law to justify pretrial detention, *id.*—granted a writ of habeas corpus, ordering the respondent

16  released unless the state conducts a hearing compliant with the Due Process Clause, *id.* at *8.

17       The remaining cases respondent cites—*Fields v. Henry County*, 701 F.3d 180 (6th Cir.

18  20112), and *Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007)—do not help him either.

19  In *Galen*, the plaintiff *paid* a money-bail amount and was released, *id.* at 661, and even then the

20  Circuit concluded that the money-bail amount may have been excessive under the Eighth

21  Amendment, *id.* ("We also disagree with the district court's suggestion that the fact that Galen

22  posted bail compels a finding that his bail was not excessive."). And in *Fields*, the court did not

23  address the questions presented here. There, the plaintiff contended that a money-bail amount in

24  his case was excessive (and violated the state-created-rights doctrine under the due process clause),

25  but did not contend that the state had violated his fundamental right to pretrial liberty or the Equal

26  Protection Clause. *Fields*, 701 F.3d at 185.

27

28       [7] The defendant is *Caliste* appealed the district-court judgment only on another issue in that case. The cited portion of the case is final. *See generally Caliste v. Cantrell*, No. 18-30954 (5th Cir. 2019).

Respondent relies on a host of Eighth Amendment cases to argue that the money-bail amount required for Petitioner's release is not excessive merely because Petitioner cannot pay it. (Doc. 14, at 18–19.) This argument fails for the simple reason that Petitioner does not make an Eighth Amendment argument here. Petitioner does not contend that the money-bail amount in his case is unconstitutional merely because he cannot pay it either; he argues that it is an *order of detention* because he cannot pay it. Respondent's cases holding that money bail is not excessive under the Eighth Amendment, therefore, do nothing to rebut Petitioner's claims.

Respondent is also wrong to argue that Petitioner is required to proceed under the Eighth Amendment, or that the Eighth Amendment's standards somehow limit those under the Due Process Clause. (Doc. 14 at 17–20.) The Supreme Court has repeatedly "rejected" the notion "that the applicability of one constitutional amendment pre-empts the guarantees of another." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993). "Certain wrongs," the Court has explained, "affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992); *see also, e.g.*, *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1266 (10th Cir. 2008) (recognizing that "statutes involving discrimination on the basis of religion . . . are subject to heightened scrutiny whether [a claim] arise[s] under the Free Exercise Clause, the Establishment Clause, or the Equal Protection Clause" (citations omitted)). Where a plaintiff invokes more than one constitutional provision, the Supreme Court has instructed, a court must "examine each constitutional provision in turn." *Soldal*, 506 U.S. at 70.

*Salerno* itself illustrates this principle. The arrestees there argued that the deprivation of their pretrial liberty pursuant to the Bail Reform Act violated both the Due Process Clause of the Fifth Amendment *and* the Excessive Bail Clause of the Eighth Amendment. 481 U.S. at 746. The Court never so much as hinted that only one of those theories was permissible. To the contrary, it analyzed respondents' claim under both. *See id.* at 746–51 (substantive due process), 752–55 (Eighth Amendment).

True, the Supreme Court has cautioned that reliance on substantive due process is sometimes improper where challenged conduct is covered by a specific constitutional provision.

*See Graham v. Connor*, 490 U.S. 386, 394 (1989). But that caution is not implicated here. *Graham* reflects only a "reluctan[ce] to expand the concept of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Petitioner's claims involve no such expansion; they rely on the venerable principle that substantive due process encompasses the core interest in bodily liberty prior to trial.

Finally, even the underlying premise of Respondent's argument—that Petitioner would not have been entitled to the relief he seeks had he proceeded under the Eighth Amendment—fails. "The Supreme Court has made clear that bail is excessive under the eighth amendment when set in an amount *greater than that required* for reasonable assurance of the presence of the defendant." *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) (emphasis added); *see also Salerno*, 481 U.S. at 754 (holding, under the Eighth Amendment, that "when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, *and no more*" (emphasis added)). That Eighth Amendment standard is substantively identical to the standard that the Supreme Court has applied under the Fourteenth Amendment, namely that government may not use unaffordable money bail to detain arrestees unless doing so is necessary to further a government interest (such as assuring appearance at trial), and only then after robust procedures.[8]

### 2. The Constitution Requires More than Merely a Non-Arbitrary State-Court Decision

Respondent contends throughout his brief that the money-bail order in Petitioner's case was not required arbitrarily and, therefore, that it does not violate his constitutional rights. (Doc.

---

[8] Respondent appears to confuse the legal standard for punishment under the Due Process Clause, *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), with the legal standard for excessive bail under the Eighth Amendment, *Stack v. Boyle*, 342 U.S. 1, 5 (1951). (Doc. 14 at 20.) Under *Bell*, pretrial detainees may not be subjected to punishment, with punishment defined as a physical deprivation that is excessive relative to its permissible purposes, and therefore likely motivated by punitive intent. 441 U.S. at 538. But "excessive[ness]" under the Eighth Amendment's bail clause does not require that a bail condition be "punitive." *See generally Stack*, 342 U.S. 1. Instead, a money-bail amount violates the Eighth Amendment's bail clause whenever it is excessive relative to its permissible purpose: to assure the reappearance of the defendant for trial. *Id.* at 5. That the money-bail amount required of Petitioner may not be punitive is irrelevant.

14 at 14.)[9] But arbitrariness is not the standard. Respondent cites *Atkins v. Michigan*, 644 F.2d 543, 550 (6th Cir. 1981), and *United States ex rel Garcia v. O'Grady*, 812 F.2d 347, 352 (7th Cir. 1987), for the proposition that "the only issue to be resolved by a federal court presented with a habeas corpus petition *that complains of excessive bail* is whether the state judge has acted arbitrarily in setting that bail." (Doc. 14 at 2 (emphasis added) (internal quotation marks and citations omitted).) That may be true. But in *Atkins* the Sixth Circuit also recognized that "if [petitioner's] liberty is to be denied, it must be done pursuant to an adjudicatory procedure that does not violate the standards for due process established by the fourteenth amendment." *Atkins*, 644 F.2d at 550. There, the adjudicatory procedure violated due process because there was no reasoning at all. Here, the adjudicatory procedure violates due process because there was insufficient reasoning, incorrect legal standards, and nonexistent findings. The procedure still violates due process. And this case, unlike *Garcia*, does *not* complain of excessive bail. (*See infra* Part III.A.) This Court, therefore, reviews the state courts' decision for compliance with the Due Process and Equal Protection Clauses, not merely for arbitrariness.

### 3. The Constitution Requires Clear and Convincing Evidence to Detain a Person Pretrial

The question of what evidentiary standard is required to jail a person under an unaffordable money-bail order is an open one in the federal courts of appeals. But there is ample state and federal authority to support the proposition that clear and convincing evidence is required, and counsel is aware of only one court in the country that has allowed a standard lower than clear and convincing evidence on constitutional grounds when considering whether to detain a person prior to trial on allegations of future dangerousness—and that Court's decision was based on a factually false premise.

Several lower courts have explicitly held that clear and convincing evidence is required in

---

[9] $40,000 has no logical relationship to the purpose for which it was ostensibly chosen: to ensure reappearance at trial. For a very wealthy person, $40,000 is a pittance, and would do little—if anything—to forward that purpose; for a very poor person, it is an insurmountable fortune, and would do nothing to serve its purpose other than detain, which need not be accomplished using money at all, let alone a specific amount of money. Still, this Court need not determine whether the state-courts' money-bail order was arbitrary because this Court's review is far more searching.

circumstances like those in this case. In *In re Humphrey*, the California Court of Appeal considered the evidentiary standard required by the Due Process Clause when unaffordable money bail is imposed, on materially identical facts to those here, and held, under the federal Constitution, that "[i]f [a] court concludes that an amount of bail the defendant is unable to pay is required to ensure his or her future court appearances, it may impose that amount only upon a determination by clear and convincing evidence that no less restrictive alternative will satisfy that purpose." No. A152056, 2018 WL 550512, *17 (Cal. Ct. App. Jan. 25, 2018). Similarly, in *Kleinbart v. United States*, 604 A.2d 861, 868 (D.C. 1992), the D.C. Court of Appeals held that *Salerno* required that courts use a clear-and-convincing-evidence standard for pretrial detention. *Id.* And, in *Caliste*, the United States District Court for the Eastern District of Louisiana held that clear and convincing evidence is required to detain someone on an unaffordable money-bail amount. 329 F. Supp. at 313. "In cases where physical liberty is at stake in all kinds of situations," the court explained, "the [Supreme] Court consistently applies the clear and convincing standard." *Id.* (citing *Cruzan by Cruzan v. Missouri Dep't of Health*, 497 U.S. 261, 282–83 (1990) *Foucha v. Louisiana*, 504 U.S. 71, 82 (1992); *Santosky v. Kramer*, 455 U.S. 745, 756 (1982); *Addington v. Texas*, 441 U.S. 418, 432 (1979).)

These decisions follow from well-established Supreme Court precedent requiring a heightened evidentiary burden where the government seeks to deprive a presumptively innocent person of the fundamental right to bodily liberty, based on a suspicion of future risks, prior to or absent a criminal conviction. In *Addington v. Texas*, 441 U.S. 418, 432 (1979), the Supreme Court held that the standard of proof required before a person can be committed into state custody for mental illness based on the possibility of dangerousness to self or others must, under the Due Process Clause, be "equal to or greater than" the "clear and convincing" evidentiary standard. To arrive at that holding, the Court applied the test articulated in *Mathews v. Eldridge*, according to which a court must balance the significance of the private right at stake, the risk of erroneous deprivation of that right, and the government's interest in employing a lesser standard. The Court reasoned that the weight of the interests at stake, coupled with the essentially predictive nature of the decision to be made, necessitated a clear-and-convincing standard. *Id.*

Since *Addington*, the Supreme Court has repeatedly reaffirmed its conclusion that the deprivation of important interests, such as physical liberty, requires, at a minimum, a heightened, intermediate standard of proof. In *Santosky v. Kramer*, 455 U.S. 745, 756 (1982), the Court summed up this longstanding due process requirement: "This Court has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Id.* (citations omitted). And in *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, the Court surveyed its due process cases requiring the clear and convincing evidence standard because of the importance of the interests at stake:

> Thus, such a standard has been required in deportation proceedings, *Woodby v. INS*, 385 U.S. 276 (1966), in denaturalization proceedings, *Schneiderman v. United States*, 320 U.S. 118 (1943), in civil commitment proceedings, *Addington*, *supra*, and in proceedings for the termination of parental rights, *Santosky*, *supra*.

497 U.S. 261, 282–83 (1990) (citations and quotations omitted).

In *Foucha v. Louisiana*, 504 U.S. 71, 82 (1992), the Court once again explained the importance of the "clear and convincing" standard when striking down, on due process grounds, Louisiana's statutory scheme for perpetuating the confinement of those acquitted on the basis of insanity in criminal trials. The Court held that "[t]he State may [] confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous." *Id*. at 80 (quotation and citation omitted).  In explaining this holding, *Foucha* explicitly relied on *United States v. Salerno*, 481 U.S. 739 (1987), in which the Court upheld the federal Bail Reform Act's preventive detention mechanism in part because it required findings of dangerousness by the longstanding "clear and convincing" standard. "Unlike the sharply focused scheme at issue in *Salerno*," the *Foucha* Court explained, "the Louisiana scheme of confinement is not carefully limited. Under the state statute, Foucha is not now entitled to an adversary hearing at which *the State must prove by clear and convincing evidence* that he is demonstrably dangerous to the community." 504 U.S. at 81 (emphasis added).

Lower courts, interpreting *Salerno*, have applied the *Addington* line of cases to pretrial detention regimes. Most recently, the Ninth Circuit relied on *Salerno*'s heightened-scrutiny framework in striking down an Arizona law requiring detention for undocumented arrestees in criminal cases. *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 784–85 (9th Cir. 2014) (*en banc*). It did so in part because the Arizona law, unlike the federal Bail Reform Act, did not require the government to prove by clear and convincing evidence that an individual arrestee's detention was necessary. *Id.* at 784–85. As the Ninth Circuit explained, *Salerno* relied on the fact that the Bail Reform Act applied only to "individuals who have been arrested for a specific category of extremely serious offenses"[10] and that the statute ensured that "[e]ach arrestee was entitled to a 'full-blown adversary hearing,' at which the government was required to prove by 'clear and convincing evidence' that the individual presented 'a demonstrable danger to the community' and that 'no conditions of release c[ould] reasonably assure the safety of the community.'" *Id.* (citations omitted.)

Undersigned counsel is aware of only one case rejecting the argument that the Due Process Clause requires clear and convincing evidence to detain a person pretrial on the basis of his future dangerousness, and that case relied on grounds that are factually false. In *Weatherspoon*, on which Respondent relies, the court reasoned that no states in fact require clear and convincing evidence and that no courts have held that the Constitution requires clear and convincing evidence. But both of those propositions, as the *Weatherspoon* petitioner noted in a motion to reconsider, are flatly false. *See* Memorandum of Law in Support of Motion to Reconsider, Doc. 33-1, *Weatherspoon v. Oldham*, 17-CV-2535 (W.D. Tenn. March 2, 2018). The court rejected the petitioner's motion for reconsideration on the ground that petitioner did not raise these cases in his opening briefs (even though the issue was not presented by the respondent's papers); the court did not address the merits of the petitioner's contentions. This Court should reject *Weatherspoon*'s conclusion and instead follow *Humphrey*, *Caliste*, *Kleinbart*, and the clear Supreme Court precedent explained above.

---

[10] Petitioner has not argued that his alleged offenses are categorically not serious enough to warrant preventive pretrial incapacitation as a matter of federal due process. Instead, Petitioner argues that the record in this case cannot justify detention. Therefore, this Court need not determine whether the charges alleged in this case can ever form the basis of a Constitution pretrial-detention order.

## C.  The State Courts Heard No Evidence and Made No Findings

Despite Respondent's assertions to the contrary, Petitioner has not received the adversarial hearing to which he is entitled—no court has heard any evidence or made any of the findings due process requires. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). Defense counsel argued for a bail reduction on two occasions, at each of which the court heard only that: arguments of counsel. Among those arguments were unsworn, unverified, serious allegations against Petitioner, allegations that, in both state and federal court, Respondent asks the courts to accept as true rather than subjecting to an adversarial hearing as due process requires. Still, on neither occasion did the court hear evidence or testimony. Although the district court summarily announced that Petitioner was "receiving an adversarial hearing right now," (Pet. App'x, Doc. 3 at 62),  that "provided both substantive and procedural due process," (Doc. 3 at  65), the record shows no such thing. The court did not—as Respondent recognizes it was required to— "examin[e] . . . what release conditions were necessary to protect Nevada's compelling interest . . . [,] petitioner's ability to pay, [or] . . . potential alternatives to monetary bail." (Doc. 14 at 29.) The pages of the transcript Respondent cites to support the assertion that the court "ma[de] findings" (Doc. 14 at 29:25–27), "verified it could not impose conditions sufficient to protect the community" (Doc. 14 at 30), and otherwise complied with the statutory requirements of Nevada law (*id.*), lack any mention of any of those words. *Compare* (Doc. 14 at 29–30) *with* (Doc. 3 at 65–67.) Respondent's argument that because Nevada law requires judges to consider certain factors in determining bail conditions Judge Bailus did *in fact* consider those factors is circular and not supported by the record. Instead of hearing evidence and making findings, the state courts each bucked any responsibility to take seriously Petitioner's claim. At Petitioner's first hearing before the justice of the peace, defense counsel made a request for the bail amount to be lowered, to which the judge responded, "Really? Look at that face. Look at your client. He's using his puppy dog face. What is that? I've never seen that before." (Doc. 3 at 18.) Without hearing evidence or making any findings, the court denied the request, saying only that the amount was "standard bail for the charges." (Doc. 3 at 19.) The state district court proceedings were also perfunctory and misguided.

The district court judge entertained Respondent's position that the hearing and findings Petitioner seeks under the Due Process Clause of the United States Constitution are "federal beasts, not state beasts." (Doc. 3 at 62:6.) It then told Petitioner that his claims were "better put to the justice court, not the district court," because the justice court makes initial bail determinations, even though— as defense counsel argued then to the district court—neither criminal defendants nor defense counsel are allowed to participate in those proceedings. Not once did the state district court state that it was making a finding of any kind, and at no time did either side submit evidence or testimony. Instead, the hearing ended on the court's *ipsi dixit* announcement that Petitioner had just received substantive and procedural due process. He had not.

### D. Petitioner Does Not Challenge Nevada's Statutory Bail Scheme, Which Permits But Does Not Require Unconstitutional Detention

Respondent contends that "Petitioner's argument is a challenge to the constitutionality of Nevada's statutory bail scheme . . . ." (Doc. 14 at 14.) This is false. Nothing about Nevada's statutory bail scheme *requires* unconstitutional detention and, therefore, Petitioner does not contend that the scheme is unconstitutional. Instead, Petitioner contends that money-bail amounts beyond a defendant's means are orders of detention and, therefore, that they must satisfy the constitutional rules governing orders of detention. That Nevada law *allows* unconstitutional detention does not, on its face, make Nevada law unconstitutional. Respondent's argument regarding the constitutionality of bail schedules is, therefore, irrelevant.

## III. Conclusion

For the foregoing reasons, this Court should grant a conditional writ of habeas corpus and order Petitioner released unless the state conducts an adversarial hearing that complies with the Due Process Clause and proves by clear and convincing evidence that Petitioner's release poses a risk of flight or danger to the community that no alternative conditions of release could reasonably mitigate.

Dated: 5/3/2019                      */s/ Charles Gerstein*
                                     Charles Gerstein
                                     (*pro hac vice*)
                                     Olevia Boykin
                                     (*pro hac vice*)
                                     Civil Rights Corps

910 17th Street NW, Suite 200
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809

Nancy M. Lemcke, Deputy Public Defender
Clark County Public Defender
309 S. Third Street, Second Floor
Las Vegas, Nevada 89144
lemckenl@clarkcountynv.gov
(702) 455-5039